**BROWN et al. v. BROWN et al.**

No. 6173.

Court of Civil Appeals of Texas. Amarillo.
Sept. 24, 1951.

Rehearing Denied Nov. 5, 1951.

McNees & McNees, Dallas, for appellants.

Sanders, Scott, Saunders & Smith, Adkins, Folley, Adkins, McConnell & Hankins, and Lewis Jeffrey, Amarillo, for appellees.

LUMPKIN, Justice.

This appeal is from an order dismissing a suit in which Earl Richardson Brown and Viola Richardson Brown Blankenship and husband, Donald A. Blankenship, are plaintiffs, and Albert William Brown and the other beneficiaries under the will of William H. Brown, deceased (some 22 in number), are the defendants.

The plaintiffs pleaded that William H. Brown was married twice, first to Nellie Gray Brown, who died in 1894. To this union were born three children: Alfred Oliver Brown, Albert William Brown and Florence Cornelia Brown. Only the defendant, Albert William Brown, was living at the time this suit was filed. William H. Brown's second wife was Mary F. Brown. No children were born to this marriage.

On May 21, 1915, the plaintiffs, Earl Richardson Brown and Viola Richardson Brown Blankenship, orphan children, seven and six years old respectively, were living in the Brown home located on a ranch near Dumas, Texas. On that day the following instrument, properly acknowledged, was filed in the Deed Records of Moore County:

"State of Texas ⎱ Know All Men By
"County of Moore ⎰ These Presents:

"That we, Wm. H. Brown and wife, Mary F. Brown, of the County and State aforesaid, hereby adopt Earl Richardson and Viola Richardson, orphan children now in my home, placed there by the Texas Children's Home and Aid Society, said children to hereafter be known as Earl Richardson Brown and Viola Richardson Brown. We adopt said children under the laws of the State of Texas, and pledge ourselves to be to said children kind and affectionate parents and to accord to them all the opportunities in life that our means and standing entitles them to. We pledge ourselves to be to said children the same parents as if they was [sic] our own children by nature, and to see that their intellectual and moral training is well cared for. The said children shall share our property as provided for by the laws of Texas.

"Witness our hands this 21st day of May, 1915.

"Wm. H. Brown
"Mary F. Brown."

According to the plaintiffs' allegations, Mary F. Brown died on July 18, 1926. Her will, probated on February 21, 1927, bequeathed all of her property to her husband. When William H. Brown died on January 12, 1941, he owned real estate of the approximate value of $1,000,000 and personal property valued at about $50,000. By the terms of his will, probated on February 3, 1941, most of his estate was placed in trust. It made certain provisions for his natural children and a niece and provided that after their deaths, the estate should pass to his grandchildren. It gave $5 to each of the plaintiffs which they refused to accept.

The plaintiffs pleaded that on or about September 3, 1949, the defendants had entered upon and dispossessed them of their rights in the William H. Brown estate. They prayed for title and possession of a share of the estate. The trial court dismissed the case, and the plaintiffs have duly perfected their appeal to this court.

The plaintiffs predicate their appeal upon this single point of error: "The error of the court in sustaining the * * * motion to dismiss, because the appellants do have title to the various interests as provided by the Statutes of Descent and Distribution in their deceased adoptive parents' estate, which title was created by the irrevocable deed and contract of adoption which contained the provision, 'The said children shall share our property as provided for by the laws of Texas.'"

█ In our opinion the instrument dated May 21, 1915, and filed in the Deed Records of Moore County, is nothing more, and was intended to be nothing more, than a simple deed of adoption as provided for by the statutes then in effect. It vested no property rights in the plaintiffs either by deed or contract.

The statute under which the plaintiffs were adopted in 1915, Article 1, Vernon's Sayles' Texas Civil Statutes, 1914, reads as follows: "Any person wishing to adopt another as his legal heir may do so by filing in the office of the clerk of the county court of the county in which he may reside a statement in writing, by him signed and duly authenticated or acknowledged, as deeds are required to be, which statement shall recite, in substance, that he adopts the person named therein as his legal heir, and the same shall be admitted to record in said office."

The rights granted an adopted person are set forth in Article 2 of the statute: "Such statement in writing, signed and authenticated or acknowledged, and recorded as aforesaid, shall entitle the party so adopted to all the rights and privileges, both in law and equity, of a legal heir of the party so adopting him; provided, however, that if the party adopting such heir have, at the time of such adoption, or shall thereafter have, a child begotten in lawful wedlock, such adopted heir shall in no case inherit more than one-fourth of the estate of the party adopting him."

In construing these statutes our courts have held that the primary effect of an adoption was to create the legal relation of ancestor and heir and not to create the status of parent and child. Eckford v. Knox, 67 Tex. 200, 2 S.W. 372; Preusse v. McLerran, Tex.Civ.App., 282 S.W. 293; Bell v. Thomsen, 116 Tex. 325, 273 S.W. 1109. To effect an adoption under the statute, the instrument, or deed of adoption, had to declare in substance that the adopter made the adopted his full legal heir, Thompson v. Waits, Tex.Civ.App., 159 S.W. 82, and without condition, Preston v. Mayo, Tex.Civ.App., 238 S.W. 1008, else the one to be adopted did not become the legal heir of the adopter. The Supreme Court in the case of Eckford v. Knox, supra [67 Tex. 200, 2 S.W. 372], construed the meaning of the words "legal heir" by saying: "Strictly speaking, there is no such thing as an heir of a living person. When the statute says that one person may adopt another as his heir, and that the latter thereupon becomes entitled to all the rights and privileges of a legal heir of the party so adopting him, it means that, upon the death of the adopting party, the other shall, if living, become entitled to an interest in all property of which he shall die intestate, and shall not be wholly excluded by any class of persons whatsoever. * * * Whoever succeeds to the property of a deceased person who dies intestate succeeds to it as an heir. To create one person the heir of another is to give him the right to succeed to a portion, and, if there be no other heirs, the whole of the latter's estate, if he die intestate."

Since William H. Brown did not die intestate, we must examine the deed of adoption and see if it deprives the foster parent of the legal right to disinherit his adopted children or the right to leave them only $5 each. In construing instruments our courts are governed by certain well established rules. A written instrument, not alleged to be ambiguous, must be construed so as to carry out the primary intent of the parties. It must be considered as a whole and given its reasonable, natural and probable meaning. It must be interpreted according to the obvious import of its language without resorting to a subtle or a forced construction. One clause cannot be considered by itself; every clause must be considered with reference to the whole instrument as well as with reference to every other clause. Southern Travelers' Ass'n v. Wright, Tex.Com.App., 34 S.W.2d 823; Southwestern Life Ins. Co. v. Houston, Tex.Civ.App., 121 S.W.2d 619, error refused; Pagel v. Pumphrey, Tex.Civ.App., 204 S.W.2d 58, writ refused; Green v. Farmers & Merchants State Bank, Tex.Civ.App., 100 S.W.2d 132, writ refused; Guardian Trust Co. v. Bauereisen, 132 Tex. 396, 121 S.W.2d 579.

A careful reading of the deed of adoption, as quoted above, reveals that it is only in the final sentence that the Browns name the plaintiffs their legal heirs. The words "The said children shall share our property as provided for by the laws of Texas" were sufficient to create the plaintiffs the Browns' legal heirs. We cannot, however, give to this language the restricted meaning contended by the plaintiffs: The Browns did not say "as provided for by" one law, i.e., the statutes of Descent and Distribution of Texas, Vernon's Ann. Civ.St. art. 2570 et seq. To place upon these words such an interpretation reads into this simple sentence a meaning never contemplated by either of the Browns. When they wrote "as provided for by the laws of Texas" they meant to say as provided for by all the laws of Texas. Such laws, of course, include the statutes of Descent and Distribution. They also include the law of wills under which a parent

998

may disinherit a child and under which a parent may favor one child over another. The words "as provided for by the laws of Texas" are a limitation upon or qualification of the clause which reads, "The said children shall share our property * * *" and constitute an express reservation by the Browns of their rights under "the laws of Texas." Had the Browns intended that the plaintiffs should inherit a portion of their property at their death, they would not have added the words "as provided for by the laws of Texas" but, possibly, would have been content to have the sentence read: "The said children shall share our property." The deed of adoption created between the Browns and the plaintiffs just such a relation in law and in fact as would have existed between them and their natural children and no more. Hoch v. Hoch, 140 Tex. 475, 168 S.W.2d 638. Nothing in the deed of adoption deprived the adopting parents, or either of them, of the power of disposing of their property by a later will to the practical exclusion of the plaintiffs.

■ Since the deed of adoption fails to contain words of conveyance, does not identify the property, has no habendum language, contains no warranties, it obviously cannot be considered a deed of conveyance. Brown v. Payne, 142 Tex. 102, 176 S.W.2d 306; Sanderson v. Sanderson, 130 Tex. 264, 109 S.W.2d 744. Nor do we find anything in the deed of adoption wherein the Browns contracted to invest the plaintiffs with title to any property or agreed not to disinherit them. The Supreme Court of the United States, in answering a similar contention, said in Hood v. McGehee, 237 U.S. 611, 35 S.Ct. 718, 719, 59 L.Ed. 1144: "The language relied upon as a contract was simply the language of adoption used in the duly authorized notarial act. It had its full effect by constituting the plaintiffs adopted children under the Louisiana law. It gave them whatever rights the Louisiana law attempted and was competent to give them as such children, and it did not purport to do more." In the case at bar the instrument was intended to be nothing more than a mere statutory adoption of an heir. Cubley v. Barbee, 123 Tex. 411, 73 S.W.2d 72.

We have carefully reviewed the record in this case. We find no reversible error. We, therefore, overrule the appellants' point of error and affirm the judgment of the trial court.